IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID JOHNSON, | : | CIVIL ACTION NO. **3:CV-08-0593** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY A. BEARD, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On April 2, 2007, Plaintiff, David Johnson, currently an inmate at the State Correctional

Institution at Rockview ("SCI-Rockview"), Bellefonte, Pennsylvania, filed, *pro se*, the instant civil

rights action pursuant to 42 U.S.C. § 1983. (Doc. 1).  Plaintiff properly filed his action in the United

States District Court for the Middle District of Pennsylvania since, as  Plaintiff recognizes (Doc. 1,

p. 1), he is an inmate in the Middle District of Pennsylvania, his claims relate to his confinement in

the Middle District of Pennsylvania, and all Defendants except one is employed at the prison

located in the Middle District of Pennsylvania.[1]  Plaintiff also filed a Motion for Appointment of

---

[1]Plaintiff's Complaint consists of two pages of a form Complaint, the first and last, as well as 8 handwritten pages, which Plaintiff has labeled pages 1-8. Doc. 1. We will refer to Plaintiff's first page as 1A and his last page as 9 for present identification purposes.  Plaintiff also attached three exhibits to his Complaint, namely Inmate Michael Austin's June 14, 2006 Inmate Request to Staff, his June 12, 2006 Grievance, and a June 14, 2006 Grievance Rejection Form pertaining to Austin's stated Grievance.  Plaintiff seems to attached these exhibits to his Complaint, even though they are not his grievance and request to staff and were filed by Inmate Austin, to try and show that he (Plaintiff) should be excused from exhausting his DOC Administrative remedies with respect to his claims.  (Doc. 1, p. 1A).  We  will refer to these documents as Exs. A-C.

We fail to see how Plaintiff can show that he should be excused from exhausting his DOC Administrative remedies by submitting as exhibits copies of Inmate Austin's Grievance and the

Counsel, along with a support Brief and Affidavit.  (Docs. 5-7).[2]

Plaintiff filed an *in forma pauperis* Motion.  (Doc. 2).   Plaintiff essentially claims that Defendants were deliberately indifferent to his serious mental health needs at SCI-Rockview. Plaintiff also claims Defendants failed to transfer him to Waymart State Hospital[3] for treatment for his severe mental illness.

Plaintiff names the following five (5) Defendants:   Jeffery A. Beard, Secretary of the Pennsylvania Department of Corrections ("PA DOC"); Franklin J. Tennis, Superintendent of SCI-Rockview; R. MacMillan, Deputy Superintendent at SCI-Rockview; Marirosa Lamas, Deputy Superintendent at SCI-Rockview; and Kevin Burke, M.D., Psychiatrist at SCI-Rockview.  (Doc. 1, pp. 2-5).

Plaintiff correctly states that this Court has jurisdiction over this § 1983 civil rights case pursuant to 28 U.S.C. § 1331 and § 1343.   (Doc. 1, p. 1).

## II.  Allegations of Complaint.

As stated, Plaintiff names five Defendants.  All of the Defendants except for Defendant Beard, Secretary of the PA DOC, were employed at SCI-Rockview during the relevant times of this case.   Specifically, Plaintiff names as  Defendants the following  prison staff members employed

---

prison's rejection response to Austin's Grievance based on procedural deficiencies, despite the similar claims Austin raised in his Grievance to Plaintiff's claims raised in his instant Complaint.

[2]By separate Order, we have denied Plaintiff's Motion for Appointment of Counsel. (Doc. 13).

[3]We construe Plaintiff as referring to SCI-Waymart's medical facility.

at SCI-Rockview during the relevant times of this case, Superintendent Tennis, Deputy Superintendent MacMillan, Deputy Superintendent Lamas, and prison psychiatrist Dr. Burke. Plaintiff states that he sues all of the defendants in their official capacities. (Doc. 1, pp. 1A, 3-6).[4]

As relief, Plaintiff requests only declaratory and injunctive relief, and he does not seek any compensatory damages. Plaintiff seeks a declaratory judgment that Defendants violated his Eighth Amendment and Fourteenth Amendment rights by their deliberate indifference to his mental health needs. Plaintiff also seeks an injunction "enjoining Defendants from illegally placing Plaintiff in lock-down because of Plaintiff 's mental illness." (Doc. 1, p. 9).[5] Plaintiff's claims against each Defendant are discussed below.

"Defendant Beard has had notice of the inadequacies of the SCI-Rockview prison system's mental health care in the light of inmate grievances filed and *pro se* lawsuits. However, he has failed to take corrective action. He is sued for ignoring and failing to react to the widespread abuses and with deliberate indifference to Plaintiff's constitutional rights failed to take action to prevent further misconduct. The defendant has failed to implement a proper mental health care program at SCI-Rockview and failed to adequately train and supervise SCI-Rockview subordinates." (Doc.

---

[4]As discussed below, if Plaintiff had requested monetary damages, to the extent that he sues Defendants in their official capacities, this request would have been barred by the Eleventh Amendment. The Eleventh Amendment does not bar a suit against a state official in his personal capacity. *See Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir.) (Non-Precedential). However, Plaintiff only requests declaratory and injunctive relief as against all Defendants, and he does not seek any monetary damages. (Doc. 1, p. 9).

[5]As discussed below, Plaintiff does not state a Fourteenth Amendment due process claim regarding his placement in punitive segregation or "lock-down."

1, p. 2).

Defendant Tennis "is sued for deliberately tring (sic) to cover-up and manipulated and undermine the exact nature of his subordinates being deliberately indifferent to the serious mental health needs of mentally ill prisoners, including Plaintiff, he has intentionally ignored and failed to react to an obvious widespread mental health care problem; he has created a policy or custom allowing or encouraging the illegal acts; was also very grossly negligent in managing his subordinates that he's supposed to supervise." (Doc. 1, pp. 2-3).

"Defendant MacMillan did not effectively or consistently refer Plaintiff to Mental Health staff when his security staff filed incident reports regarding Plaintiff's psychotic behavior. Moreover, psychiatric staff and security including Defendant MacMillan knew about Plaintiff's deterioration in lockdown as such deterioration was documented throughout the medical records and incident reports." (Doc. 1, p. 4).

Defendant Lamas "is responsible for ensuring that inmates receive access to Mental Health care. Marirosa Lamas also had knowledge of the inadequate care and harm caused to Plaintiff. Medical records and incident reports show that she was aware that Plaintiff's mental health condition deteriorated in lock-down. Dispite (sic) her knowledge of Plaintiff's psychotic behavior in lock-down, she did not act to change that system." (*Id.*).

Defendant Burke "knew about Plaintiff's deterioration in lock-down for at the minimum 1090 days spent in Punitive Segregation as such deterioration was documented throughout the medical records and incident reports. Some of the incident reports that were forwarded to psychiatric staff, including Dr. Burke's documented behavior indicating that Plaintiff was having

psychiatric problems.  Further, even when the incident reports and medical records were forwarded by defendant(s) Lamas & MacMillan to psychiatric staff, Dr. Burke did not respond to a known mental health problem.  Dr. Burke has failed to provide psychiatric follow-up for Plaintiff while locked down." (Doc. 1, p. 5).

Plaintiff also claims that Defendant Burke violated his Eighth Amendment rights by failing to transfer him to the Waymart State Hospital when necessary to ensure adequate treatment for his severe mental  illness.  (*Id.*, p. 5).

Plaintiff concludes that the  two highest supervisory Defendants, Beard and Tennis, "violated the Eighth Amendment by failing to implement a proper mental health care program and failing to adequately train and supervise subordinates."  (Doc. 1, p. 6).  Plaintiff concludes that Defendants MacMillan, Lamas and Burke violated his Eighth Amendment rights "by placing me in lock-down as punishment for the symptoms of my mental illness and as an alternative to providing mental health care."  (*Id.*).

Plaintiff states that the Defendants "have neglected to treat my mental illness.  I've been placed in lock-down to punish me for my hostile, threatening behavior that is a result of my mental illness.  The Defendants have failed to provide me with psychiatric follow-up while I have been locked down well beyond 1090 days!  Further the Defendants have failed to monitor my medication. Furthermore, the Defendants have failed to transfer me to the Waymart State Hospital when necessary to ensure adequate mental health treatment."  (Doc. 1, p. 7).

We find that Plaintiff has stated Eighth Amendment denial of proper mental health care claims as against Defendants  MacMillan, Lamas and Burke.  However, we find that Plaintiff has not

stated Eighth Amendment claims as against Defendants Secretary Beard and Superintendent Tennis, since they are not alleged to have had sufficient personal involvement with the alleged improper mental health care  Plaintiff received at  SCI-Rockview. We find that these two supervisory Defendants are named only as parties based on *respondeat superior.*  Plaintiff does not allege that the DOC official Defendant (Beard) and Defendant Superintendent Tennis were personally deliberately indifferent to his serious mental health needs and that they failed to have him treated for his condition, *i.e.* mental illness.  Plaintiff does not allege that these two Defendants prevented him from receiving proper mental health treatment at  SCI-Rockview.   Further, Plaintiff has not stated a violation of his Constitutional rights with respect to the alleged improper refusal to transfer him  to the Hospital at SCI-Waymart and with respect to his placement in the lock-down. Additionally, Plaintiff states that Defendants allowed their subordinates to engage in an illegal custom which caused him to be placed in lock-down as a punishment for the symptoms of his mental illness instead to providing him with mental health treatment. (*Id.*, p. 8).  We find that Plaintiff's claim regarding his "illegal" placement "in lock-down for [a] minimum of 1090 days spent in punitive segregation" is *Heck*-barred. (Doc. 1, p. 5).

We do find that Plaintiff has stated Eighth Amendment claims insofar as he alleges that Defendants  MacMillan, Lamas and Burke failed to provide him with proper psychiatric care and care for his mental  health  problems when they personally knew about his mental deterioration while he was in lock-down.

Plaintiff, liberally construing his claims, seems to assert that Defendants violated his due process rights by placing him in punitive segregation lock-down for at least 1090 days as

punishment for the symptoms of his mental illness and that Defendants violated his Eighth Amendment right to proper mental health care for his serious mental illness.

Plaintiff's Ex. A indicates that Inmate Austin filed a Grievance on June 12, 2006 regarding the failure to prison staff at SCI-Rockview to properly treat him (Austin) for his mental illness. Austin's Grievance was rejected on June 14, 2006 due to his failure to comply with the DOC Grievance system. Ex. B, Doc. 1. Plaintiff's Ex. C is Inmate Austin's June 14, 2006 Inmate Request to Staff in which Austin stated that he did not have to exhaust his DOC Administrative remedies with respect to his request for an injunction directing that the prison develop a comprehensive plan to improve the mental health system at the prison. As stated, Plaintiff seems to attach inmate Austin's Request and Grievance to his Complaint to show that he [Plaintiff] was excused from exhaustion. In fact, in his present Complaint, Plaintiff admits that he did not exhaust his DOC Administrative remedies and seems to state that he was excused from doing so since he is claiming that he is exposed to ongoing serious risk of harm to his health. (Doc. 1, p. 1A).[6]

---

[6]In his first page taken from a form civil rights Complaint, the Plaintiff indicates that he has utilized the grievance procedure available at SCI-Rockview, but he did not complete the grievance process. (Doc. 1, form Complaint, p. 1A).

It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under §1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* As stated, Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). We also note that the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Plaintiff has not named two proper Defendants in his §1983 action since *respondeat superior* is not a basis to hold Defendants Beard and Tennis  liable in this action.

Plaintiff has stated claims under the Eighth Amendment for failure of  Defendants MacMillan, Lamas and Burke to provide him with proper care for his mental health condition. Plaintiff seems to also claim that his due process rights under the Fourteenth Amendment were violated.  However, as discussed below, we will recommend that this claim be dismissed.  Further, we do not find sufficient personal involvement of Defendants Beard and Tennis with any of Plaintiff's claims.  We will recommend that Defendants Beard and Tennis be dismissed from this case.

Insofar as Plaintiff claims that prison staff improperly failed to  transfer him from SCI-Rockview to the hospital at SCI-Waymart and claims that he was illegally placed in punitive segregation in the lock-down, we find that these allegations fail to state a Constitutional claim under § 1983.

As stated, Plaintiff states that he sues all Defendants in their official capacities.  (Doc. 1, pp. 2-6 ).  As relief, Plaintiff requests a declaratory judgment and  injunctive relief.  He does not seeks any compensatory damages.  (Doc. 1, p. 9).

Since Plaintiff is not seeking monetary damages from Defendants in their official capacities and only requests declaratory and injunctive relief, he can sue the state Defendants in their official capacities.   *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

### III.  PLRA.

We now review the Plaintiff's pleading and find that it does not state a Constitutional claim against Defendants Beard and Tennis, namely, an Eighth Amendment denial of proper mental health care claim.  We also find no Fourteenth Amendment due process claim stated as against any Defendant.

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 2).  The Prison Litigation Reform Act of 1995,[7] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[8]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we will recommend  Plaintiff's claims as against Defendants Beard and Tennis be dismissed,  since he fails to state any cognizable

---

[7] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[8] The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 6 and 7).

Constitutional claim against them.  We will also recommend that Plaintiff's due process claim be dismissed.

## IV.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[9]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

## V.  Motion to Dismiss Standard.

When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.

---

[9]Plaintiff alleges in his pleading that the Defendant is an employee of the  PA DOC. (Doc. 1, p. 2).   This is sufficient to show that the Defendant is a  state agent.

*Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

## VI.  Discussion.

### A.  No Due Process Claim is Stated

As stated, Plaintiff seems to claim that Defendants, SCI-Rockview prison staff, violated his Fourteenth Amendment due process rights by illegally placing him in punitive segregation in the lock-down for 1090 days and by failing to transfer to him SCI-Waymart so that he could receive mental health care and treatment  participate at its Hospital.  In his Affidavit in support of his Motion for Appointment of Counsel, Plaintiff avers that in this case he alleges that he "was housed in the Maximum Security Restricted Level 5 Housing Unit for an illegal term extending well beyond 3 years + plus." (Doc. 7, p. 1, ¶ 2.).  Plaintiff also avers that he was "illegally placed in look-down to punish him for his hostile, threatening behavior that is a result of his mental illness."  (*Id.*, pp. 1-2).

The Court in *O'Connell v. Sobina*, 2008 WL 144199, * 14  (W.D. Pa. 2008), recently stated:

> The Due Process Clause does not protect every change in
> the conditions of confinement having a substantial adverse impact
> on a prisoner. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49
> L.Ed.2d 451 (1976). The Due Process Clause shields from arbitrary
> or capricious deprivation only those facets of a convicted criminal's
> existence that qualify as "liberty interests." *Hewitt v. Helms,* 459 U.S. 460,
> 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Morrissey v. Brewer,* 408 U.S.
> 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The types of protected
> liberty interests are not unlimited. The interest must rise to more than
> an abstract need or desire and must be based on more than a unilateral
> hope. Rather, an individual claiming a protected interest must have a
> legitimate claim of entitlement to it. *Greenholtz v. Inmates of Nebraska*

*Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's claims is whether Defendants' actions impacted a constitutionally-protected interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. *Hewitt,* 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, *Morrissey,* 408 U .S. at 471, and the revocation of probation, *Gagnon,* 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g., Hewitt,* 459 U.S. at 468; *Wolff,* 418 U.S. at 556; *Montayne v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Sheehan v. Beyer,* 51 F.3d 1170, 1175 (3d Cir.1995); *Layton v. Beyer,* 953 F.2d 839, 845 (3d Cir.1992). Nor does it create an inherent liberty interest guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another within the state prison system. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest.

The *O'Connell* Court also stated:

"In *Sandin* [*v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)],  the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an *"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin,* 515 U.S. at 483 (emphasis added)."

*Id.* at * 15.

We do not find that Plaintiff 's placement for 1090 days in punitive segregation in lock-down at SCI-Rockview by Defendants MacMillan, Lamas and Burke constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Further, Defendants Beard and Tennis are not alleged to have been personally involved in the placement of Plaintiff in lock-down as punishment for his symptoms of his mental illness.  (Doc. 1, p. 6).

Morever, we find that Plaintiff's claim that he was illegally placed for 1090 days in punitive segregation in lock-down is *Heck*-barred.

Recently, this Court in *Supples v. Burda*, Civil No. 07-1560, M.D. Pa., 10-26-07 Memorandum (J. Caldwell), slip op. pp. 6-7, 2007 WL 3165537, stated:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court clarified the interplay between habeas and civil-rights claims.  The Court ruled that a section 1983 claim for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394 (footnote omitted).
>
> *Heck* has been extended to requests for declaratory and injunctive relief.  *See Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983 action seeking damages and declaratory relief which challenges a prison disciplinary hearing forfeiting good-time credits).  As the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original): "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct

> leading to conviction or internal prison proceedings)  - *if* success
> in that action would necessarily demonstrate the invalidity of the
> confinement or its duration." As the Third Circuit has summarized
> the holding of *Heck*: "where success in a § 1983 action would
> implicitly call into question the validity of conviction or duration
> of sentence, the plaintiff must first achieve favorable termination of
> his available state or federal habeas remedies to challenge the
> underlying conviction or sentence." *Williams, supra*, 453 F.3d at 177
> (Emphasis added),

Plaintiff's allegations that he was illegally placed in the lock-down would necessarily demonstrate the invalidity of his confinement or its duration in punitive segregation.   Even though he only seeks  declaratory and injunctive relief, we find success of Plaintiff's due process claim would directly call into question the legality of the duration of his confinement in lock-down.

In *Howard v. BOP*, this Court stated:

> Howard's claim challenges the conditions of his confinement: he
> does not seek restoration of good time credits, and the liberty interest
> he asserts is the interest, after having been assaulted by inmate Dorsey
> and having documents indicating he was an informant discovered and
> circulated by inmate Bostic, "in administrative segregation or
> protective custody without being sanctioned with a routine series
> of disciplinary reports. (Br. in Opp'n, Doc. 159 ¶ 30). Nonetheless, his
> claim is barred by the favorable termination rule. In *Edwards,* the
> plaintiff challenged the procedures that led to his sanction, which included
> a loss of thirty (30) days of good time credit and placement in restrictive
> settings. 520 U.S. at 643. He sought declaratory relief and damages,
> but, like Howard, did *not* seek restoration of the good time credits.
> *Id.* at 643-44. Even though he was not requesting relief that would alter
> the term of his confinement, the Supreme Court held that the
> favorable termination rule barred his claim because a finding that
> the procedures were invalid would "necessarily imply the invalidity of
> the deprivation of his good-time credits." *Id.* at 646. Likewise, here,
> a finding that imposing sanctions on Howard "due to Plaintiff's refusal
> to leave the SHU because of fear for his safety," (Am. Compl., Doc.
> 135 ¶ 21) violated his constitutional rights would necessarily imply
> the invalidity of those sanctions. For this reason, without reaching
> the question whether Howard's asserted liberty interest is

14

> constitutionally protected, I find that his claim in Count V is barred by
> the favorable termination rule.

2008 WL 318387, * 18 (M.D. Pa.,2008).

In *Walker v. Zenk*, Civil No. 01-1644, M.D. Pa., 2-7-08 Memorandum, slip op. p. 27, the

Court stated:

> The rule established by the line of cases including *Heck* and
> *Edwards* is that a prisoner's civil rights action is barred - - regardless
> of the relief sought and regardless of the circumstances giving rise
> to the claim - - if success in that action would necessarily
> demonstrate the invalidity of confinement or the duration of
> confinement. *Wilkinson*, 544 U.S. at 81-82.

We find that if this Court granted Plaintiff the stated injunctive relief which he seeks, *i.e.* "An

injunction enjoining Defendants from illegally placing Plaintiff in lock-down because of Plaintiff's

mental illness" (Doc. 1, p. 9), it would necessarily imply the invalidity of his continued confinement

in punitive segregation.  We also found that Plaintiff has not asserted a liberty interest that was

Constitutionally protected with respect to his placement in lock-down.

Therefore, we will recommend that, insofar as Plaintiff is raising a Fourteenth Amendment

procedural due process claim, that it  be dismissed as against all of the Defendants.

Further, Plaintiff does not have a right to confinement in any particular prison, and the

failure to transfer him to the Hospital at SCI-Waymart does not implicate any constitutionally

protected rights.  *See Olim v. Wakinekona*, 461 U.S. 238 (1983).

*C. Eighth Amendment*

Plaintiff alleges that his Eighth Amendment rights were violated with respect to the failure

of prison staff to properly treat him for his mental deterioration which they knew he suffered during

15

his confinement in the lock-down.  We have found  that Plaintiff has not stated an Eighth

Amendment claim as against supervisory Defendants Beard and Tennis, but that he has stated

Eighth Amendment claims as against Defendants MacMillan, Lamas and Burke.

As the Third Circuit Court stated in *Goodrich  v. Clinton County Prison*, 214 Fed. Appx. 105,

112 (3d Cir. 2007) "a supervisor may be personally liable under § 1983 'if he or she participated

in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in his subordinates' violations,' *A.M.,* 372 F.3d at 586 ... ."

However, as discussed above, we have found that Plaintiff's allegations are insufficient

to establish that Beard and Tennis violated his Eighth Amendment rights since it is not alleged that

they were personally involved in Plaintiff's mental health treatment or that they knew that the other

3 Defendants were not treating Plaintiff properly for his mental illness deterioration while he was

in the lock-down.  In short, it is not alleged that these two Defendants were aware of Plaintiff's

deterioration in lock-down and they were not aware of any improper mental health care by the

prison's medical staff during this time.  As the *Goodrich* Court also stated, "non-physician

defendants cannot be "considered deliberately indifferent simply because they failed to respond

directly to the medical complaints of a prisoner who was already being treated" by the prison's

medical staff. *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993).  Because the prison's medical

staff, through Dingler, was providing medical consultation and evaluation, Duran and Motter cannot

be considered deliberately indifferent for failing to second-guess the medical staff's appraisal of the

situation."  Thus, since Dr. Burke, the prison psychiatrist was treating Plaintiff for his mental illness,

Beard and Tennis cannot be claimed to have been deliberately indifferent to Plaintiff's needs and

for not second-guessing Dr. Burke's plan of treatment.

The *Goodrich* Court also stated:

A prison official's deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth Amendment and states a cause of action under § 1983 *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment claim has objective and subjective components. First, the prisoner must show that his medical need is, objectively, sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). Second, he must establish that the prison official acted with subjective deliberate indifference, that is, that the official was aware of a substantial risk of serious harm to the prisoner but disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

A medical need qualifies as "serious" for purposes of Eighth Amendment analysis if, for example, "it is one that has been diagnosed by a physician as requiring treatment." *Monmouth County Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (quotation and citation omitted). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quotation *111 and citation omitted). A mental illness may constitute a serious medical need. *Inmates of the Allegheny County Jail v. Pierce,* 612 F.2d 754, 763 (3d Cir.1979) ("Although most challenges to prison medical treatment have focused on the alleged deficiencies of medical treatment for physical ills, we perceive no reason why psychological or psychiatric care should not be held to the same standard.).

An inmate can show deliberate indifference" where, for example, "prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering." *Lanzaro,* 834 F.2d at 346 (quotation and citation omitted). Alternatively, deliberate indifference" is shown where knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care" or where"prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment." *Id.* at 346-47 (quotations and citations omitted). It is clear, however, that allegations of negligence do not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Finally, "whether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the

fact finder." *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.,* 372 F.3d 572, 588 (3d Cir.2004) (quoting *Nicini v. Morra,* 212 F.3d 798, 816 (3d Cir.2000) (Rendell, J., dissenting)).

214 Fed. Appx. At 110-111.

As discussed above, we find that Plaintiff has alleged that Defendants MacMillan, Lamas and Burke were deliberately indifferent to his serious mental health illness and that they failed to treat him properly have him treated when they personally knew about his deterioration of his mental health while he was lock-down.  (Doc. 1, pp. 4-5).  Plaintiff has stated that he suffered from a deterioration of his mental illness while he was in lockdown for 1090 days and that Dr. Burke failed to provide follow-up psychiatric care for him while he was in lock-down.   Plaintiff has alleged that the conduct of the stated three Defendants resulted in an "unnecessary and wanton infection of pain", "thus qualifying his medical needs as 'serious'." *Id*. at 111 (Citing *Lanzaro*, 834 F. 3d at 347 and *Pierce*, 612 F. 2d at 763("noting the possibility that 'the failure to provide necessary psychological or psychiatric treatment to inmates with serious mental or emotional disturbances will result in the infliction of pain and suffering just as real as would result from the failure to treat serious physical ailments'").

Thus, we shall recommend that Plaintiff's Eighth Amendment claims asserted against Defendants MacMillan, Lamas and Burke proceed.

**VII.  Recommendation.**

Based on the above, it is respectfully recommended that this case be dismissed as to all claims against  Defendants Beard and Tennis  as well as Plaintiff 's 14/a due process claim  against all Defendants  pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Further, we recommend that Plaintiff's Eighth Amendment claims against Defendants MacMillan, Lamas and Burke be allowed to proceed. We recommend that this case be remanded to the undersigned for Further proceedings as against Defendants MacMillan, Lamas and Burke, including the grating of Plaintiff's *in forma pauperis* motion (Doc.  2) and directing service of his Complaint on the stated three Defendants.[10]

s/ Thomas M.  Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

**Dated: April 17 2008**

---

[10]As noted, we have denied  Plaintiff's  Motion for Appointment of Counsel by Order dated April 14, 2008.   (Doc.  13).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID JOHNSON, | : | CIVIL ACTION NO. **3:CV-08-0593** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY A. BEARD, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 17, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

20

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                **s/ Thomas M. Blewitt**
_____   **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: April 17, 2008**